# EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**LAKE COUNTY, ILLINOIS**

CRAFTWOOD LUMBER COMPANY, an Illinois )
corporation, individually and as representative )
of all others similarly situated )
                                              )
                                              )
                                              )
                                              )
                                Plaintiff(s)  )
              vs.                             )
                                              )        21CH00000090
OMNIMAX INTERNATIONAL, LLC, a Delaware )
Limited Liability Company;  OMNIMAX  )          Case No: _____
INTERNATIONAL, INC., a Delaware corporation )
                                              )
                                              )
                                              )
                                              )
                                Defendant(s)  )

SUMMONS

**To each defendant**:

    You are summoned and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the Clerk of this Court, within 30 days after service of this summons, not counting the day of service.  If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

    E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.  If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp or talk with the Lake County Circuit Clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask the circuit clerk for more information or visit www.illinoislegalaid.org.

    If you are unable to pay your court fees, you can apply for a fee waiver. for information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask the circuit clerk's office for a fee waiver application.

To the officer:
    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so indorsed.

171-138 Rev 09/20

This summons may not be served later than 30 days after its date.

WITNESS     2/26/2021

*Erin Cartwright Weinstein*

ERIN CARTWRIGHT WEINSTEIN,
Clerk of Court

LB

Prepared by:
Name: Trobe, Babowice & Associates, LLC     Pro Se ☐

Address: 404 West Water Street

City: Waukegan     State: IL

Phone: 847-625-8700     Zip Code: 60085

ARDC #: 2857863

Fax: 847-625-8708

E-mail address: ptrobe@tbalaws.com

(If service by facsimile transmission will be accepted, the telephone number of the plaintiff or plaintiff's attorney's facsimile machine is additionally required.)

Date of Service _____, 20_____ (to be inserted by officer on copy left with defendant or other person).

171-138 Rev 09/20

SHERIFF'S FEES

( Service and return ............................................. $ _____
(
( Miles_____  ............................................. $ _____
(
( Total................................................................. $ _____

_____

Sheriff of _____ County

I certify that I served this summons on defendants as follows:

(a)-(Individual defendants – personal):

(The officer or other person making service, shall (a) identify as to sex, race and approximate age of the defendant with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of the day when the summons was left with the defendant).

_____

_____

_____

_____

(b)-(Individual defendants – abode):

By leaving a copy of the complaint at the usual place of each individual defendant with a person of his family, of the age of 13 years or upwards, informing that person of the contents of the summons.  (The officer or other person making service, shall (a) identify as to sex, race and approximate age of the person, other than the defendant, with whom he left the summons, and (b) state the place where (whenever possible in terms of an exact street address) and the date and time of day when the summons was left with such person).

_____

_____

and also by sending a copy of the summons and of the complaint in a sealed envelope with postage fully prepaid, addressed to each individual defendant at his usual place of abode, as follows:

Name of defendant              Mailing Address                    Date of mailing

_____        _____        _____

_____        _____        _____

(c)-(Corporate defendants):

By leaving a copy and a copy of the complaint with the registered agent, officer or agent of each defendant corporation, as follows:

Defendant corporation          Registered agent, officer or agent          Date of Service

_____        _____        _____

_____        _____        _____

(d)-(Other service):

_____

_____

_____

_____ Sheriff of _____County

By: _____

(Deputy)

171-138 Rev 09/20

<u>SERVICE LIST</u>

OMNIMAX INTERNATIONAL, LLC
c/o Registered Agent
CORPORATION SERVICE COMPANY
251 Little Falls Drive
Wilmington, Delaware 19808


OMNIMAX INTERNATIONAL, INC.
c/o Registered Agent
COGENCY GLOBAL INC.
850 New Burton Road
Suite 201
Dover, Delaware 19904

FILED
2/26/2021 1:21 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation,<br><br>        Defendants. | Case No.   21CH00000090 |

**Complaint for Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and**

**FCC Regulations [Class Action] and for Declaratory Relief; Exhibit;**

**Demand for Jury Trial**

Plaintiff Craftwood Lumber Company ("Craftwood" or "Plaintiff") brings this action on behalf of itself and all other similarly situated parties, and alleges:

## Introduction

1.      Three decades ago, the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was enacted into law.  The law responded to countless complaints by American consumers and businesses about the cost, disruption, and nuisance imposed by junk faxes.  The law prohibited the transmission of facsimile advertising without the prior express invitation or permission of the recipient.  In 2005, because consumers and businesses continued to be besieged with junk faxes, Congress strengthened the law by amending it through the Junk Fax Prevention Act of 2005.[1]  As amended, the law requires a sender to include in its faxed advertisements a clear and conspicuous notice that discloses to recipients their right to stop future faxes and explains how to exercise that right.

2.      Plaintiff brings this class action to recover damages for and enjoin repeated junk faxing by Defendants OmniMax International LLC and OmniMax International, Inc., in direct violation of the TCPA and the regulations promulgated by the Federal Communications Commission.  Within four years preceding the filing of this Complaint, OmniMax sent junk faxes to Plaintiff, including, but not limited to, the facsimile transmission of advertisements to Craftwood's telephone facsimile number (847) 831-2805.  A true and correct copy of one junk

---

[1]  Unless otherwise noted, all statutory references are to this statute in effect since 2005.

fax is attached hereto as Exhibit 1.

**Standing and Jurisdiction**

3.     This Court has subject matter jurisdiction over this matter and Plaintiff has

standing to seek relief in this Court because 47 U.S.C. § 227 (b)(3) authorizes commencement of

a private action in an appropriate state court to obtain damages for Defendants' violations of the

TCPA and/or FCC regulations, to obtain injunctive relief, or for both such actions.  Plaintiff is

informed and believes, and upon such information and belief alleges, that OmniMax transmitted

the faxes that are the subject of this lawsuit without obtaining recipients' prior express invitation

or permission in direct violation of the TCPA and FCC regulations.

4.     Plaintiff sustained concrete and actual injury as a result of OmniMax's actions

and omissions because OmniMax's junk faxes, among other things, wrongfully occupied

Plaintiff's facsimile telephone lines; caused Plaintiff's fax lines to be unavailable for legitimate

business use; wasted time required to manage and dispose of OmniMax's junk faxes; consumed

and wasted Plaintiff's electricity, paper, and toner; invaded Plaintiff's privacy rights; subjected

Plaintiff to an informational injury; and violated Plaintiff's interests in seclusion.  Plaintiff did

not give OmniMax prior express invitation or permission to send fax advertisements, including,

but not limited to, Exhibit 1 to this Complaint.

5.     This Court has personal jurisdiction over OmniMax because OmniMax, either

directly or through agents, regularly conducts business within the state of Illinois, intentionally

transmitted the unsolicited facsimile advertisements that are the subject of this action from the

state of Illinois, intentionally directed the unsolicited facsimile advertisements that are the subject of this action to recipients within the state of Illinois, and OmniMax committed at least some of its violations of the TCPA and FCC regulations within the state of Illinois.

## The Parties

6.      **Individual Plaintiff/Class Representative**.  Plaintiff Craftwood Lumber Company is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the state of Illinois, with its principal place of business in Highland Park, Illinois.  Craftwood is, and at all times relevant hereto was, the subscriber of the facsimile telephone number ((847) 831-2805) to which OmniMax sent junk faxes, including, but not limited to, the fax attached as Exhibit 1 to this Complaint.

7.      **Defendant OmniMax**.  Defendant OmniMax International LLC, is a limited liability company organized and existing under the laws of the state of Delaware, and having its principal place of business in Peachtree Corners, Georgia.  Defendant OmniMax International, Inc., is a corporation organized and existing under the laws of the state of Delaware and having its principal place of business in Peachtree Corners, Georgia.  At all relevant times, the OmniMax Defendants have been a "person" within the meaning of 47 U.S.C. §§ 153(39) and 227(b)(1).

## The TCPA's Prohibition Against Junk Faxing

8.      By the early 1990s advertisers had exploited facsimile telephone technology to

blanket the country with junk fax advertisements. This practice imposed tremendous disruption, annoyance, and cost on the recipients. Among other things, junk faxes tie up recipients' telephone lines and facsimile machines, misappropriate and convert recipients' fax paper and toner, and require recipients to sort through faxes to separate legitimate fax communications from junk advertisements and to discard the latter.

9.    Congress responded to the problem by passing the TCPA in 1991. The law was enacted to eradicate junk faxes and stanch "the explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. No. 102-317 (1991). It sought to accomplish this objective by prohibiting advertisers from transmitting facsimile advertisements without first obtaining prior express invitation or permission from the recipient.

10.    The original law did not achieve its objectives, however. In the decade following the TCPA's enactment, American consumers and businesses continued to be "besieged" by junk faxes because senders refused to honor requests by recipients to stop.[2] Congress responded by strengthening the law through the JFPA. This 2005 amendment for the first time required advertisers to disclose to recipients their right and ability to stop future junk faxes (hereinafter collectively the "Opt-Out Notice Requirements").[3] To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement, separate from the advertising copy and any other disclosures, that informs

---

[2]  FCC, Report and Order on Reconsideration of Rules and Regulations Implementing the TCPA of 1991, 29 Comm. Reg. 830 ¶ 186 (2003).

[3]  *See* 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D), (b)(2)(E), (d)(2); 47 C.F.R. § 64.1200(a)(4)(iii)-(vii).

recipients of their right to stop future junk faxes and of the legal requirements for an effective opt-out request. The notice must be distinguishable from the advertising copy by use of bolding, italics, and different font.

## OmniMax's Illegal Junk Fax Program

11.     OmniMax International is a building products company manufacturing aluminum, steel, vinyl and copper products. OmniMax has several brands, including without limitation Amerimax, Alumawood, Berger, CopperCraft, Equinox, Fabral, Flamco, Global Expanded Metals, and Knotwood. This family of brands includes fabricators of aluminum, steel, vinyl, copper, and fiberglass products for equipment manufacturers, distributors, contractors and home centers.

12.     On information and belief, within the past four years, OmniMax has adopted and implemented an illegal junk fax advertising program to promote the sale of OmniMax property, goods and services offered under its brands, including without limitation Berger and Amerimax identified in Exhibit 1. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of OmniMax's overall promotion and sale of OmniMax's property, goods, and services. These illegal junk faxes include, but are not limited to, Exhibit 1 to this Complaint.

13.     Plaintiff is informed and believes, and upon such information and belief alleges, that OmniMax transmitted the junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. The faxes have no opt-out.

- 5 -

14.     OmniMax's violations of the TCPA and/or FCC regulations were "willful" and/or "knowing" as used in § 227(b)(3) because, among other things, OmniMax fully intended its acts; the company's repeated transmission of fax advertisements was no mistake or accident.

15.     Plaintiff is informed and believes, and upon such information and belief alleges, that OmniMax approved, authorized and/or participated in the formulation, preparation and sending of the fax advertisements; received and retained the benefits of the fax advertisements in the form of revenue, name/brand recognition and promotion; and had actual notice of the unlawful activity constituting the violations herein and failed to take steps to prevent the same.

16.     **Private Right of Action**.  Under section (b)(3) of the TCPA, Plaintiff has a private right of action to bring this action on behalf of itself and on behalf of the Plaintiff Class to redress OmniMax's violations of the Act and the FCC regulations.

### Class Action Allegations

17.     **Statutory Reference**. This action is properly maintainable as a class action under authority of Code of Civil Procedure section 2-801 because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of fact or law common to the class, which common questions predominate over questions affecting only individual members; (c) the representative parties will fairly and adequately protect the interest of the class; and (d) a class action is an appropriate method for the fair and efficient adjudication of the controversy.

18.     **Class Definition**. The Plaintiff Class consists of all persons and entities that were

subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of OmniMax property, goods, or services was sent via facsimile transmission on and after the four years preceding the filing of this Complaint, including, without limitation, the fax attached as Exhibit 1 to this Complaint. Plaintiff reserves the right to amend the class definition after completion of class certification discovery.[4]

19. **Class Size**. Plaintiff is informed and believes, and based and upon such information and belief alleges, that the Plaintiff Class numbers in the thousands and is therefore sufficiently numerous that the joinder of all members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each Plaintiff Class member, in comparison to the time and costs associated with litigation on an individual basis.

20. **Typicality**. Plaintiff's claims are typical of those held by the Plaintiff Class because they share the same essential characteristics. Among other things, Plaintiff and members of the class were sent the same type of unsolicited junk fax communications; all parties have the same claims under the TCPA and FCC regulations; and all parties are entitled to the same statutory damages and injunctive relief. In sum, Plaintiff's claim arises from the same course of conduct that gives rise to the claims of the Plaintiff Class, and Plaintiff's claim is based

---

[4] Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors or assigns of any Defendant, Defendants' officers and directors, or of any affiliated company; parent and subsidiary companies of either Defendant; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

on the same legal theories.

21.     **Adequacy of Representation**.  The Plaintiff Class will be well represented by Plaintiff and its counsel.  Plaintiff appreciates the responsibilities of a class representative and understands the nature and significance of the claims made in this case.  Plaintiff can fairly and adequately represent and protect the interests of the Plaintiff Class because there is no conflict between its interests and the interests of other class members.  Plaintiff's counsel have the necessary resources, experience and ability to prosecute this case on a class action basis. Plaintiff's attorneys have extensive experience representing consumers and other clients in complex business disputes, have significant experience as class counsel in federal and state courts, and have significant experience prosecuting class actions for TCPA violations.

22.     **Impracticability of Joinder**.  Joinder of all Plaintiff Class members is impracticable due to the class's size and due to the relatively small potential monetary recovery for each class member, in comparison to the time and costs associated with joinder in the litigation on an individual basis.

23.     **Common Questions of Law and Fact Are Predominant**.  Numerous common questions of law and fact may be jointly tried and would not require each member individually to litigate numerous and substantial questions to determine his or her right to recover following the class judgment.

     A.     **Common Questions of Fact**.  This case presents numerous questions of fact that are common to all class members' claims.  The case arises out of a common nucleus of

fact and standardized conduct by OmniMax because, among other things: (1) the same type of faxes; (2) were transmitted by the same senders, in the same manner and from the same facsimile telephone number; (3) in violation of the same statute(s) and FCC regulations in the same manner; and (4) entitling class members to receive the same statutory damages and injunctive relief.

B. **Common Questions of Law**. The case presents numerous common questions of law, including, but not limited to:

(1) whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations;

(2) whether OmniMax sent unsolicited facsimile advertisements in violation of 47 U.S.C. § 227(b)(1)(C);

(3) what constitutes a willful or knowing violation of the TCPA within the meaning of 47 U.S.C. § 227(b)(3);

(4) whether OmniMax committed willful and/or knowing violations of the TCPA and/or the FCC's regulations;

(5) whether damages should be increased on account of OmniMax's willful and/or knowing violations and, if so, by what amount; and

(6) whether the injunctive relief sought in paragraph 31 should issue.

24.     **Injunctive Relief Is Appropriate**.  OmniMax has acted on grounds that apply generally to the Plaintiff Class, making injunctive relief appropriate with respect to the Plaintiff Class as a whole.

25.     **Predominance and Superiority of Class Adjudication**.  This action should be maintained as a class action because a class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, (a) common questions of law and fact, including those identified in paragraph 23, predominate over questions, if any, affecting only individual members; (b) prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for OmniMax; (c) proof of Plaintiff's claims will also prove the claims of the proposed class without the need for separate and individualized proceedings, and the statutory damages provided by the TCPA are the same for all members of the proposed class, such that damages can be calculated with mathematical certainty; and (d) OmniMax has acted pursuant to common policies and practices in the same or similar manner with respect to all members of the Plaintiff Class; (e) the practical economics of litigation and the potential recovery from individual litigation make it uneconomical for class members to prosecute individual claims; (f) class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings in the event individual cases are brought; (g) and class litigation would serve to educate members about their legal right to stop unwanted facsimile advertising, a particularly important interest in light of OmniMax's failure to make disclosures required under the TCPA.

26.     **Appropriate Method for Fair and Efficient Resolution of the Controversy**.  A

class action is an appropriate method for the fair and efficient adjudication of the controversy for several reasons:

A.  Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for OmniMax.

B.  Because OmniMax has acted on grounds that apply generally to the class, final injunctive relief is appropriate respecting the class as a whole.

C.  Questions of law and fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

D.  Common questions of law and fact, including those identified in paragraph 23, predominate over questions affecting only individual members.

E.  Absent class certification there is a possibility of multiple individual cases and, therefore, class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

F.  Most members of the Plaintiff Class are not likely to join or bring an individual action due to, among other reasons, the small amount to be recovered relative to the time, effort and expense necessary to join or bring an individual action. Individual action to remedy OmniMax's violations would be grossly uneconomical. As a practical matter, the claims of the Plaintiff Class are not likely to be redressed absent class certification.

G.      Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and, hence, subject to an order spreading the fees and costs of litigation among class members in relationship to the benefits received.

27.      **Notice**.  Plaintiff contemplates that notice be provided to all members of the Plaintiff Class that can be identified through reasonable effort.  The notice will concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues and defenses; that a class member may enter an appearance through counsel if the member so desires; if the class is certified that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members.

## Count I: Claim for Relief for Violations of the TCPA and FCC Regulations

28.      **Incorporation**.  Plaintiffs and the Plaintiff Class reassert the allegations set forth in the preceding paragraphs.

29.      **OmniMax Direct Liability**.  Within four years preceding the filing of this Complaint, including without limitation, on August 13, 2018, and continuing to the present, OmniMax violated 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) by using a telephone facsimile machine, computer, or other device to send unsolicited facsimile advertisements to telephone facsimile machines of Plaintiff and other members of the Plaintiff Class.  OmniMax is the sender of all the unsolicited facsimile advertisements, and is therefore directly liable for these violations because it was persons on whose behalf the advertisements

were sent or, in the alternative, because their goods and services were advertised or promoted in the facsimile advertisements.

30.     **OmniMax Vicarious Liability**.  In the alternative, OmniMax is vicariously liable for violations of 47 U.S.C. § 227(b)(1)(C) and 47 C.F.R. 64.1200(a)(1)(4) because, on information and belief, OmniMax (1) retained an authorized agent to promote the sale of its products and services, and sending facsimile advertisements were within the course and scope of the agency; (2) exercised actual control over the operation of the illegal fax-blasting program; (3) had the ability to control the operation of the illegal fax-blasting program; (4) actively participated in the illegal fax-blasting program; and (5) received, ratified and retained benefits received from the illegal fax-blasting program.

31.     **Injunctive Relief**.  Subsection (b)(3)(A) of the TCPA authorizes Plaintiff to bring an action to enjoin a violation of the Act and/or FCC regulations.  Plaintiff requests that preliminary and permanent injunctions issue to: (1) prohibit OmniMax, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from committing further violations of the Act and FCC regulations, and thereby, among other things, prohibiting OmniMax, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with it, from sending to any person or entity any further unsolicited fax advertisements; (2) require OmniMax to deliver to Plaintiff all records of facsimile advertisements that are the subject of this lawsuit, including all content sent via facsimile, fax lists used, and records of transmission; (3) require OmniMax to adopt ongoing educational, training and monitoring programs to ensure compliance with the TCPA and FCC regulations, and limiting facsimile advertising activity to personnel who have undergone such

training; (4) require OmniMax to provide written notice to all persons and entities to whom it sent, via facsimile transmission, advertisements in violation the Act and/or FCC regulations, warning such persons and entities that the facsimile transmission of unsolicited advertisements is in violation of the TCPA and FCC regulations and that they should not be led or encouraged in any way by OmniMax's violations of the Act and/or FCC regulations to send advertisements of their own that violate the Act and/or FCC regulations; and (5) require OmniMax to conspicuously place on the homepage of its website the warnings contained in subparagraph 4 of this paragraph.

32. **Damages**. Subsection (b)(3)(B) of the Act provides for the recovery of damages in the minimum amount of $500 for each violation by OmniMax of the TCPA and/or FCC regulations alleged in this Count. In addition, Plaintiff is informed and believes, and upon such information and belief alleges, that OmniMax committed its violations willfully and/or knowingly and that the amount of statutory damages should be increased up to three times, as also authorized by subsection (b)(3)(B) of the Act.

**Prayer for Relief**

WHEREFORE, Craftwood and the Plaintiff Class pray for judgment against OmniMax, as follows:

1. In accordance with 47 U.S.C. § (b)(3)(B), awarding statutory damages in the amount of $500 for each violation of the TCPA's and/or FCC's prohibition against unsolicited facsimile advertisements in an amount not less than $5 million, and trebling of such statutory damages;

2.      Entering the preliminary and permanent injunctions requested in paragraph 31 of this Complaint;

3.      Certifying the Plaintiff Class defined in paragraph 18 of this Complaint;

4.      Appointing Plaintiff as representative for the Plaintiff Class and awarding it an incentive award for its efforts as class representative;

5.      Appointing Plaintiff's counsel as counsel for the Plaintiff Class;

6.      Ordering that Plaintiff's expenses and costs of litigation, including, without limitation, costs of suit and attorneys' fees, be apportioned among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class;

7.      Ordering OmniMax to provide notice to members of the Plaintiff Class proposed in paragraph 27, at its own expense, of the pendency of this action and all other notices ordered by the Court;

8.      Awarding prejudgment interest; and

9.      Awarding such other and further relief as the Court shall deem just and proper.

DATED: February 25, 2021       TROBE, BABOWICE & ASSOCIATES, LLC

                                   /s/  Peter Trobe

                        Peter Trobe [Illinois Bar No. 2857863]
                        Email: ptrobe@tbalaws.com
                        404 West Water Street
                        Waukegan, Illinois 60085
                        Telephone: (847) 625-8700

                        Attorneys for Plaintiff Craftwood Lumber Company, on
                        behalf of itself and all others similarly situated

**EXHIBIT 1**

13-Aug-2018  20:51     From 888-440-4597 To 18478312005          888-440-4597          p.1



QUALITY BUILDING PRODUCTS SINCE 1874



# *SUMMER SIZZLER PROMOTION!*

Effective Monday, August 13 through Friday, August 17, 2018

## *$1.00 Off Per Roll of Smooth 24" x 50' Trim Coil any quantity*

## *5% off all Drip Edge*

## *5% off all Copper Pipe and Gutter Lengths*

## *10% off TitanGuard™ Gutter Guard*

  

\*\* All Discounts are in addition to existing volume discounts \*\*

\*\* All orders must ship by August 24, 2018 to qualify \*\*

**FILED**
**2/26/2021 1:21 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

Craftwood Lumber Company, et al. _____ )
)
vs. )
)
OmniTax International LLC and OmniTax International, Inc. _____ )

Gen No. _____

**21CH00000090**

## CERTIFICATE OF ATTORNEY – CIVIL DIVISION

1) Pursuant to Local Rule 2-2.01(c), I hereby certify that:

- [x] There has been no previous Voluntary or Involuntary Dismissal of the subject matter of this litigation.

- [ ] There has been a previous Voluntary or Involuntary Dismissal of the subject matter of this litigation and at the time of dismissal that Case No. _____ was assigned to the

  Honorable _____

- [x] There is no other litigation presently pending in the county involving these parties.

- [ ] There is other litigation presently pending in the county involving the parties to or subject matter to this lawsuit and that case(s) is/are assigned Case No.(s)_____
  which is/are assigned to the

  Honorable _____

2) Are you seeking any injunctive relief?

- [x] Yes - Select the appropriate case subtype under the Chancery-CH heading below.
- [ ] No - Select the appropriate non-Chancery case subtype below.

This data is being gathered for administrative purposes and will not be used for any other purpose.

**Arbitration – AR**
- [ ] Arbitration/Tort
- [ ] Arbitration/Contract
- [ ] Foreign Judgment
- [ ] Other subtype _____

**Chancery – CH**
- [ ] Residential Mortgage Foreclosure
- [ ] Residential Mortgage Foreclosure w/Mechanics Lien
- [ ] Non-Residential Mortgage Foreclosure
- [ ] Injunction
- [ ] Specific Performance
- [ ] Mechanics Lien Foreclosure
- [ ] Complaint for Rescission
- [ ] Partition
- [ ] Quiet Title
- [x] Class Action
- [ ] Structured Settlement
- [ ] Foreign Judgment
- [ ] Other subtype _____

**Eminent Domain – ED**
- [ ] Eminent Domain
- [ ] Condemnation
- [ ] Other subtype _____

**Law Magistrate – LM**
- [ ] Eviction
- [ ] Eviction as result of mortgage foreclosure
- [ ] Replevin
- [ ] Detinue
- [ ] Distress for Rent
- [ ] Foreign Judgment
- [ ] Confirm Arbitrator's Award
- [ ] Confession of Judgment
- [ ] Other subtype _____

**Law – L**
- [ ] Tort
- [ ] Contract
- [ ] Product Liability
- [ ] Medical Malpractice
- [ ] Legal Malpractice
- [ ] Forcible Entry and Detainer
- [ ] Replevin
- [ ] Accounting Malpractice
- [ ] Foreign Judgment
- [ ] Confirm Arbitrator's Award
- [ ] Other subtype _____

**Municipal Corporation – MC**
- [ ] Annexation
- [ ] Disconnection
- [ ] Other subtype _____

**Miscellaneous Remedy – MR**
- [ ] Declaratory Judgment
- [ ] Corporation Dissolution
- [ ] Election Contest
- [ ] Mandamus
- [ ] Habeas Corpus
- [ ] Review of Administrative Proceeding/Statutory
- [ ] Review of Administrative Proceeding/Certiorari
- [ ] Quo Warranto
- [ ] Change of Name
- [ ] Forfeiture
- [ ] Fugitive from Justice
- [ ] Search Warrant
- [ ] Application for Eavesdropping Device
- [ ] Foreign Judgment
- [ ] Non-Attendance of Jurors
- [ ] Miscellaneous
- [ ] Other subtype _____

**Tax – TD**
- [ ] Deeds
- [ ] Other subtype _____

**Probate – P**
- [ ] Decedent/Testate > $15,000
- [ ] Decedent/Intestate > $15,000
- [ ] Decedent/Testate $15,000 or less
- [ ] Decedent/Intestate $15,000 or less
- [ ] Guardianship of Person/ Disabled Person
- [ ] Guardianship of Estate/ Disabled Person
- [ ] Guardianship of a Person and Estate/Disabled Person
- [ ] Guardianship of Person/ Minor
- [ ] Guardianship of Estate/Minor
- [ ] Guardianship of Person and Estate/Minor
- [ ] Proof of Heirship Alone
- [ ] Foreign Judgment
- [ ] Other subtype _____

**Tax – TX**
- [ ] Objections
- [ ] Disposition of Collections of Judgment of Settlement
- [ ] Sale in Error
- [ ] Other subtype _____

Print Name  Peter M. Trobe _____

Signature  Peter M. Trobe _____

- [x] Attorney
- [ ] Self-Represented Litigant

171-366 (Rev 7/18)

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS**

**FILED
2/26/2021 1:21 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois**

Craftwood Lumber Company, et al.
<u> </u>

Plaintiff(s)

vs.

OmniMax International, LLC and OmniMax International, Inc.
<u> </u>

Defendant(s)

)
)
)
)
)
)
)
)
)
)
)

21CH00000090

Gen No: _____

AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222 (B)

Pursuant to Supreme Court Rule 222 (B), counsel for the above-named plaintiff certifies that plaintiff seeks money

damages in excess of Fifty Thousand and 00/100 Dollars ($50,000).

By

Peter M. Trobe
<u> </u>
Attorneys for Plaintiff

Prepared by:
Name: <u>Peter M. Trobe, Trobe, Babowice & Assoc. LLC</u>  Pro Se ☐
Address: <u>404 W. Water Street</u>
City: <u>Waukegan</u>  State: <u>il</u>
Phone: <u>847-625-8700</u>  Zip Code: _____
ARDC #: <u>2857863</u>
Fax: <u>847-625-8708</u>
E-mail address: <u>ptrobe@tbalaws.com</u>

#171-312 (Rev 12/17)

FILED
2/26/2021 1:21 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 21CH00000090 |
| OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation, | |
| Defendants. | |

**Plaintiff's Protective Motion for Class Certification**

IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation,<br><br>   Defendants. | Case No. |

**Plaintiff's Protective Motion for Class Certification [735 ILCS 5/2-801]**

1. Plaintiff hereby moves this Court, under authority of 735 ILCS 5/2-801, for an order certifying the following Plaintiff Class:

The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of OmniMax property, goods, or services was sent via facsimile transmission on and after the four years preceding the filing of this Complaint, including, without limitation, the fax attached as Exhibit 1 to the Complaint. Plaintiff reserves the right to amend the class definition after completion of class certification discovery. (*See* Compl. ¶ 18.)

2. This case is appropriate for class treatment for the following reasons:

- 1 -

(a)     The proposed Class consists of thousands of Class members with claims too small to warrant individual actions. The Class is therefore so numerous that joinder of all members is impracticable.

(b)     There are questions of law and fact common to all Class members, and those common questions predominate over individual questions, if any.

(c)     Plaintiff and its attorneys will provide fair and adequate representation to the Class.

(d)     A class action is an appropriate method to resolve this dispute and provides the best means for the fair and efficient adjudication of Class member claims.

3.     Plaintiff has filed this motion at the outset of the case to invoke the protection afforded under Illinois law against an attempt by Defendants to pick off Plaintiff as class representative and thereby avoid class-wide accountability for its illegal fax-blasting operations. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015); *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011). Plaintiff respectfully requests that the Court continue hearing on the motion following a period of discovery directed to class certification issues, then permit amended briefing on class certification based on the additional facts and arguments developed in discovery.

4.     In support of this motion, Plaintiff is concurrently filing its Memorandum in Support of Protective Motion for Class Certification and the Declarations of David Brunjes and C. Darryl Cordero.

WHEREFORE, Plaintiff prays that the Court enter and continue the motion to permit

discovery on class certification issues, then certify the Class as proposed above and designate

Plaintiff as Class Representative and its attorneys as Class Counsel.


DATED: February 25, 2021        TROBE, BABOWICE & ASSOCIATES, LLC

                               /s/  Peter Trobe

                        Peter Trobe [Illinois Bar No. 2857863]
                        Email: ptrobe@tbalaws.com
                        404 West Water Street
                        Waukegan, Illinois 60085
                        Telephone: (847) 625-8700

                        Attorneys for Plaintiff Craftwood Lumber Company, on
                        behalf of itself and all others similarly situated

**FILED**
**2/26/2021 1:21 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.    21CH00000090 |
| OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation, | |
| Defendants. | |

**Plaintiff's Memorandum in Support of Protective Motion for Class Certification**

# Table of Contents

Page

Introduction ........................................................................................................................... 1

Plaintiff's Motion Protects Against a Potential "Pick-Off" Attempt ................................. 1

The Federal Prohibition Against Junk Faxes ...................................................................... 2

Defendants' Junk Fax Program ........................................................................................... 3

The Proposed Plaintiff Class ............................................................................................... 4

Argument .............................................................................................................................. 5

I.     The Weight of Authority Strongly Favors Certification of Junk Fax Classes ...................... 5

II.     The Case Satisfies All Requirements for Class Certification ................................. 6

        A.     Joinder of All Members Is Impracticable ................................................. 7

        B.     Common Questions of Fact and Law Predominate in this Action............................ 8

        C.     Plaintiff and Its Counsel Will Fairly and Adequately Protect the Class.................... 9

        D.     A Class Action Provides the Best Means for Fair and Efficient Adjudication of Class Members' Claims................................................................ 11

Conclusion .......................................................................................................................... 13

**Table of Authorities**

Page(s)

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................................11

*APB Assocs. v. Bronco's Saloon, Inc.*,
  No. 09-14959, 2016 WL 1394646 (E.D. Mich. Apr. 7, 2016) ..................................................6

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*,
  322 F.R.D. 458 (N.D. Ill. 2017) ................................................................................................5

*Avio, Inc. v. Alfoccino, Inc.*,
  311 F.R.D. 434 (E.D. Mich. 2015) ...........................................................................................8

*Backer Law Firm v. Costco Wholesale Corp.*,
  321 F.R.D. 343 (W.D. Mo. 2017) .......................................................................................6, 12

*Bridgeview Health Care Ctr., Ltd. v. Clark*,
  No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) ..................................................5

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  271 F.R.D. 595 (N.D. Ill. 2010) ................................................................................................5

*Chapman v. Wagener Equities, Inc.*,
  No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ................................................5, 9

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) .........................................................2

*Crabill v. Trans Union, L.L.C.*,
  259 F.3d 662 (7th Cir. 2001) ...................................................................................................13

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
  No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012) ...................................................5

*Damasco v. Clearwire Corp.*,
  662 F.3d 891 (7th Cir. 2011) .....................................................................................................2

*Fauley v. Drug Depot, Inc.*,
  323 F.R.D. 594 (N.D. Ill. 2018) ................................................................................................5

*Fauley v. Heska Corp.*,
  326 F.R.D. 496 (N.D. Ill. 2018) ................................................................................................5

*Fields v. Maram*,
  No. 04 C 0174, 2004 WL 1879997 (N.D. Ill. Aug. 17, 2004) ..................................................7

*Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541 (7th Cir. 2017) .................................................2

*G.M. Sign, Inc. v. Group C Commc'ns, Inc.,*
  No. 08 C 4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010)......................................6

*Garrett v. Ragle Dental Lab., Inc.,*
  No. 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010)...................................6

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) ..........................................7

*Hansberry v. Lee,* 311 U.S. 32 (1940) .............................................................................11

*Hinman v. M & M Rental Ctr., Inc.,* 545 F. Supp. 2d 802 (N.D. Ill. 2008)...........8, 12

*Hughes v. Kore of Indiana Enters., Inc.,* 731 F.3d 672 (7th Cir. 2013) .......................13

*In re AEP ERISA Litig.,*
  No. C2-03-67, 2008 WL 4210352 (S.D. Ohio Sept. 8, 2008) ................................10

*Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682 (7th Cir. 2013) ..................................5, 13

*Jay Clogg Realty Group, Inc. v. Burger King Corp.,* 298 F.R.D. 304 (D. Md. 2014) .................12

*Karpilovsky v. All Web Leads, Inc.,*
  No. 17 C 1307, 2018 WL 3108884 (N.D. Ill., June 25, 2018) .................................5

*Kaufman v. American Express Travel Related Servs. Co.,*
  264 F.R.D. 438 (N.D. Ill. 2009)...............................................................................8

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) ................................11, 13

*Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012)........................................2, 12

*Mussat v. Global Healthcare Res.,*
  No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013) ...........................5, 12

*In re Ocean Bank,* No. 06 C 3515, 2007 WL 1063042 (N.D. Ill. Apr. 9, 2007) ...........10

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.,*
  No. 08-CV-5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) ..............................5

*Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC,*
  318 F.R.D. 712 (N.D. Ill. 2016).................................................................................5

*Reliable Money Order, Inc. v. McKnight Sales Co.,*
  281 F.R.D. 327 (E.D. Wis. 2012) ..............................................................................6

*Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.,*
  No. 14-CV-596-SMY-SCW, 2016 WL 3402621 (S.D. Ill. June 21, 2016) .......6, 12

*Sadowski v. Med1 Online, LLC,*
  No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ..................................8

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC,*
   No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ........................................5

*Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.,* 251 F.R.D. 312 (N.D. Ill. 2008) ........................7

*Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.,*
   Case No. 15-1317, 2016 WL 1743037 (8th Cir. May 3, 2016) ................................5

*Savanna Grp., Inc. v. Trynex, Inc.,*
   No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) ........................................5

*Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363 (1966) ................................................10

*Texas v. Am. Blastfax, Inc.,* 121 F. Supp. 2d 1085 (W.D. Tex. 2000) ..............................3

*Vandervort v. Balboa Cap. Corp.,* 287 F.R.D. 554 (C.D. Cal. 2012) ..............................6

*West Loop Chiropractic & Sports Injury Ctr., Ltd. v. North Am. Bancard, LLC,*
   No. 16 C 5856, 2018 WL 4762333 (N.D. Ill., May 16, 2018) ................................5


**State Cases**

*Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.,*
   48 N.E.3d 1060 (Ill. 2015) ........................................................................1

*Barber v. Am. Airlines, Inc.,* 241 Ill. 2d 450 (2011) ................................................1

*Brill v. Becktold Enters., Inc.,*
   No. 06 CH 1520, 2009 WL 9152830 (Ill. Cir. Jan. 16, 2009) ................................6

*C.E. Design, Ltd. v. C&T Pizza, Inc.,*
   No. 06 CH 27638, 2013 WL 1783623 (Ill. Cir. Apr. 4, 2013) ................................6

*C.E. Design, Ltd. v. Letrix USA, Inc.,*
   No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013) ..............................6

*Clark v. TAP Pharm. Prods., Inc.,* 343 Ill. App. 3d 538 (5th Dist. 2003) ................9, 11

*Concrete Pumping Serv. Inc. v. Nextel W. Corp.,*
   345 Ill. App. 3d 992 (2d Dist. 2004) ........................................................8, 11

*Critchfield Physical Therapy v. Taranto Grp., Inc.,* 263 P.3d 767 (2011) ..............6, 13

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Cir., Inc.,*
   50 P.3d 844 (Ariz. Ct. App. 2002) ........................................................13

*G.M. Sign, Inc. v. 400 Freight Servs., Inc.,*
   No. 07 CH 2727, 2010 TCPA Rep. 1934 (Ill. Cir. Jan. 7, 2010) ..............................6

*Gordon v. Boden,* 224 Ill. App. 3d 195 (1st Dist. 1991) ........................................9, 11

*Loncarevic & Assocs., Inc. v. Stanley Foam Corp.,*
  No. 09 CH 15403, 2013 WL 1783625 (Ill. Cir. Apr. 4, 2013) ..................................6

*Martin v. Heinold Commodities, Inc.*, 139 Ill. App. 3d 1049 (1st Dist. 1985) ..............................8

*Mashal v. City of Chicago*, 981 N.Ed.2d 951 (Ill. 2012) ..........................................5

*Miner v. The Gillette Co.*, 87 Ill. 2d 7 (1981) ..............................................8

*Overlord Ent., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.,*
  No. 04 CH 1613, 2006 WL 4591049 (Ill. Cir. June 9, 2006) ..................................6

*Purcell & Wardrope Chartered v. Hertz Corp.,*
  175 Ill. App. 3d 1069 (1st Dist. 1988) ..............................................9

*Schlessinger v. Olsen*, 86 Ill. 2d 314 (1981) ..............................................5

*Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441 (2006) ..........................................5

*Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320 (1977) ......................................10, 11

*Uesco v. Poolman*, No. 09 CH 16028, 2011 WL 10798570 (Ill. Cir. Aug. 10, 2011) ..................6

*Wood River Area Dev. Corp. v. Germania Fed. Savs. & Loan Ass'n,*
  198 Ill. App. 3d 445 (5th Dist. 1990) ..............................................7


**Federal Statutes**

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ..............................*passim*

Federal Rule of Civil Procedure 23 ..............................................5


**State Statutes**

Illinois Code of Civil Procedure section 2-801, 735 ILCS 5/2-801 ......................*passim*


**Regulations**

47 C.F.R. § 64.1200(a)(4)(iii)-(vi) ..............................................3

68 Fed. Reg. 44144, 44175 (July 25, 2003) ..............................................2

Federal Communications Commission, Report and Order and Third Order on
  Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006) ..............................................3

## Introduction

This class action seeks relief from Defendants OmniMax International, Inc., and OmniMax International LLC, for blasting junk fax advertisements in direct violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Defendants' illegal junk faxes were sent to Plaintiff Craftwood Lumber Company and, on information and belief, a class of others.

This is the prototypical case for class treatment. Defendants engaged in a common course of conduct toward class members: Defendants operated a systemic mass fax-blasting campaign. All faxes are subject to the same federal statute. All faxes promote Defendants' products and services and were sent in the same manner. All faxes violate the TCPA's mandatory opt-out notice requirements. All class members are entitled to the same small statutory damages and injunctive relief. Like the countless junk fax class actions that have been brought and certified before it, this case is well suited for class treatment. These common factors explain why Illinois state and federal courts have certified numerous junk fax actions over the past few years.

### Plaintiff's Motion Protects Against a Potential "Pick-Off" Attempt

Plaintiff files this motion concurrently with its Complaint to protect against the now-common tactic by defendants to avoid class-wide accountability by attempting to "pick-off" the named plaintiff before a motion for class certification is filed. The Illinois Supreme Court has held that the defense pick-off tactic after filing of a motion for class certification is ineffective to moot a plaintiff's claims. *See Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015); *Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 456 (2011).

Plaintiff therefore brings this motion out of an abundance of caution to place itself within

this safe harbor. Plaintiff does not seek to have this motion heard immediately; rather, this is a

protective measure and Plaintiff intends to amend the motion following discovery, which

doubtless will unearth additional facts that will bolster the compelling case for certification. *See*

*Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) *overruled on other grounds by*

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) (encouraging plaintiffs to file the

motion with the complaint, then seek discovery before the motion is heard); *Fulton Dental, LLC*

*v. Bisco, Inc.*, 860 F.3d 541, 546 (7th Cir. 2017) (acknowledging that "the safest way to preserve

the option of serving as a class representative is to file a prophylactic motion for class

certification at the time the lawsuit is filed[.]") (citation omitted.)

### The Federal Prohibition Against Junk Faxes

The TCPA makes it "unlawful" for any person to send an "unsolicited advertisement" by

facsimile transmission. 47 U.S.C. § 227(b)(1)(C). An "advertisement" falls within the ambit of

the TCPA if it is "any material advertising the commercial availability or quality of any property,

goods, or services." *Id.*, § 227(a)(5). Facsimile advertisements are unsolicited if they are sent

without the recipients' prior express permission.

Congress originally passed the anti-junk fax law in 1991 in response to "[v]oluminous

consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*,

132 S. Ct. 740, 744 (2012). Despite the law, American businesses and consumers continued to

be "besieged" with junk faxes. *Rules & Regulations Implementing the Tel. Consumer Prot. Act*

*(TCPA) of 1991*, 68 Fed. Reg. 44144, 44175 (July 25, 2003). Congress responded in 2005 by

amending the TCPA through the Junk Fax Prevention Act, which added important consumer

protections in the form of opt-out notice requirements.[1]  To comply with these requirements, an advertiser must include a clear and conspicuous notice at the top or bottom of the first page of the advertisement.  The notice must provide specific disclosures to recipients (which Defendants here failed to include).  An advertiser's failure to comply with the opt-out notice requirements precludes it from asserting a three-prong affirmative defense based on an "established business relationship" with the recipient.  *Id.,* § 227(a)(5), (b)(1)(C)(i)-(iii).

The TCPA establishes a minimum statutory damage of $500 per transmission—without the need to show any actual damage.  47 U.S.C. § 227(b)(3).  A court also may increase statutory damages by up to three times if the defendant has violated the law either "knowingly" or "willfully."  *Id.,* § 227(b)(3).  The TCPA "was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct."  *Texas v. Am. Blastfax, Inc.,* 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000).  Here, class treatment will ensure that the injured class members may seek recovery under the TCPA and deter the public harm caused by Defendants' mass fax-blasting campaign.

### Defendants' Junk Fax Program

OmniMax is a building products company manufacturing aluminum, steel, vinyl and copper products.  OmniMax has several brands, including without limitation Amerimax, Alumawood, Berger, CopperCraft, Equinox, Fabral, Flamco, Global Expanded Metals, and Knotwood.  This family of brands includes fabricators of aluminum, steel, vinyl, copper, and fiberglass products for equipment manufacturers, distributors, contractors and home centers.

---

[1]  The opt-out notice requirements are contained in 47 U.S.C. § 227 (b)(1)(C)(iii), (b)(2)(D) and (b)(E), and the FCC's regulations found at 47 C.F.R. § 64.1200(a)(4)(iii)-(vi) and its 2006 order.  *See* Federal Communications Commission, Report and Order and Third Order on Reconsideration, 21 FCC Rcd. 3787 ¶ 26 (2006).

OmniMax has adopted and implemented an illegal junk fax advertising program to promote the sale of OmniMax's property, goods, and services, including those offered under the Amerimax and Berger brands. All faxes that are the subject of this lawsuit were designed as, intended as, and constituted advertisements under the TCPA within their four corners and as part of Defendants' overall promotion and sale of Defendants' property, goods, and services. These illegal junk faxes include, but are not limited to, Exhibit 1 to the Complaint.

Plaintiff is informed and believes that Defendants transmitted their junk faxes without obtaining recipients' prior express invitation or permission, in direct violation of the TCPA and FCC regulations. Plaintiff did not give Defendants prior express invitation or permission to send facsimile advertisements, including, but not limited to, Exhibit 1 to the Complaint. In the course of their illegal fax advertising campaigns Defendants also failed to comply with the TCPA's mandatory opt-out notice requirements.

### The Proposed Plaintiff Class

Plaintiff seeks to certify the following class:

> The Plaintiff Class consists of all persons and entities that were subscribers of facsimile telephone numbers to which material that advertised the commercial availability or quality of OmniMax property, goods, or services was sent via facsimile transmission on and after the four years preceding the filing of this Complaint, including, without limitation, the fax attached as Exhibit 1 to this Complaint.[2] Plaintiff reserves the right to amend the class definition after completion of class certification discovery.

---

[2] Excluded from the Plaintiff Class are officers, directors, and employees of any Defendant or any affiliated company; legal representatives, attorneys, heirs, successors, or assigns of any Defendant, Defendants' officers and directors, or of any affiliated company; parent and subsidiary companies of any Defendant; any entity in which any of the foregoing persons have or have had a controlling interest; any members of the immediate families or the foregoing persons; any federal, state and/or local governments, governmental agencies, including the Federal Communications Commission; and attorneys of record in this action and their immediate family members.

## Argument

### I.    The Weight of Authority Strongly Favors Certification of Junk Fax Classes

The Seventh Circuit has observed that "[c]lass certification is normal in litigation under §

227, because the main questions, such as whether a given fax is an advertisement, are common to

all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also CE

Design Ltd. v. King Architectural Metals, Inc.*, 271 F.R.D. 595, 600 (N.D. Ill. 2010) ("the weight

of authority" supports certification of junk fax class actions), *vacated and remanded on other

grounds*, 637 F.3d 721 (7th Cir. 2011).  Because section 2-801 of the Illinois Code of Civil

Procedure is patterned after Rule 23 of the Federal Rules of Civil Procedure, federal decisions

interpreting Rule 23 are persuasive authority on questions of class certification in Illinois.

*Mashal v. City of Chicago*, 981 N.Ed.2d 951, 959 (Ill. 2012); *Smith v. Illinois Cent. R.R. Co.*,

223 Ill. 2d 441, 447-48 (2006); *Schlessinger v. Olsen*, 86 Ill. 2d 314, 320 (1981).  Courts in the

Northern District of Illinois clearly agree with the weight of authority supporting certification of

junk fax cases,[3] and regularly and consistently certify junk fax classes.[4]  Illinois state courts do

---

[3] The Eighth Circuit held that denying certification of a class that meets the commonality and predominance requirements of Rule 23(a)(2) and (b)(3) is an abuse of discretion.  *See Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, Case No. 15-1317, 2016 WL 1743037, at *5 (8th Cir. May 3, 2016).

[4] *E.g., Fauley v. Heska Corp.*, 326 F.R.D. 496 (N.D. Ill. 2018); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884 (N.D. Ill., June 25, 2018); *West Loop Chiropractic & Sports Injury Ctr., Ltd. v. North Am. Bancard, LLC*, No. 16 C 5856, 2018 WL 4762333 (N.D. Ill., May 16, 2018), report and recommendation adopted in No. 16 C 5856, 2018 WL 3738281 (N.D. Ill., Aug. 7, 2018); *Fauley v. Drug Depot, Inc.*, 323 F.R.D. 594 (N.D. Ill. 2018); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458 (N.D. Ill. 2017); *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 318 F.R.D. 712 (N.D. Ill. 2016); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014); *Mussat v. Global Healthcare Res.*, No. 11 C 7035, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013), and 2013 WL 626981 (N.D. Ill. Feb. 20, 2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, No. 09 C 3963, 2012 WL 3961307 (N.D. Ill. Sept. 10, 2012); *Bridgeview Health Care Ctr., Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-CV-5959, 2010 WL

so as well.[5]

The common thread in the case law is that mass fax-blasting violations are tailor-made to the class action remedy. As Judge Darrah aptly put the matter, "[c]lass actions were designed for these types of claims." *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08 C 4521, 2010 WL 744262, at *6 (N.D. Ill. Feb. 25, 2010). As one court explained in certifying a class of other junk fax recipients, "[t]he 'most compelling rational for finding superiority in a class action' exists here, since this action is a 'negative value suit'—where the value of claims is so insubstantial that individual lawsuits would be unlikely or unfeasible." *Backer Law Firm v. Costco Wholesale Corp.*, 321 F.R.D. 343, 350 (W.D. Mo. 2017). A legion of courts—too numerous to cite—agree. *See, e.g., Robert L. Meinders D.C., Ltd. v. Emery Wilson Corp.,* No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *7 (S.D. Ill. June 21, 2016); *APB Assocs. v. Bronco's Saloon, Inc.,* No. 09-14959, 2016 WL 1394646, at *19 (E.D. Mich. Apr. 7, 2016); *Critchfield Physical Therapy v. Taranto Grp., Inc.*, 263 P.3d 767, 778-79 (2011); *Vandervort v. Balboa Cap. Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013).

## II. The Case Satisfies All Requirements for Class Certification

Section 2-801 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, prescribes four requirements for class *certification*: (1) the class is so numerous that joinder of all members is

---

4931001 (N.D. Ill. Nov. 29, 2010); *Garrett v. Ragle Dental Lab., Inc.*, No. 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010).

[5] *E.g., C.E. Design, Ltd. v. Letrix USA, Inc.*, No. 06 CH 26834, 2013 WL 5788356 (Ill. Cir. Aug. 30, 2013); *C.E. Design, Ltd. v. C&T Pizza, Inc.,* No. 06 CH 27638, 2013 WL 1783623 (Ill. Cir. Apr. 4, 2013); *Loncarevic & Assocs., Inc. v. Stanley Foam Corp.,* No. 09 CH 15403, 2013 WL 1783625 (Ill. Cir. Apr. 4, 2013); *Uesco v. Poolman,* No. 09 CH 16028, 2011 WL 10798570 (Ill. Cir. Aug. 10, 2011); *G.M. Sign, Inc. v. 400 Freight Servs., Inc.*, No. 07 CH 2727, 2010 TCPA Rep. 1934 (Ill. Cir. Jan. 7, 2010); *Brill v. Becktold Enters., Inc.,* No. 06 CH 1520, 2009 WL 9152830 (Ill. Cir. Jan. 16, 2009); *Overlord Ent., Inc. v. Wheaton-Winfield Dental Assocs., Ltd.,* No. 04 CH 1613, 2006 WL 4591049 (Ill. Cir. June 9, 2006).

impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect class interests; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. The proposed Plaintiff Class easily satisfies all section 2-801 elements.

### A. Joinder of All Members Is Impracticable

The defined class includes the subscribers of facsimile telephone numbers to which Defendants successfully sent fax advertisements during the class period. This group is numerous enough for class certification.

In assessing whether a proposed class meets the numerosity requirement, the court may "make common-sense assumptions that support a finding of numerosity." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). Relevant factors include the number of proposed class members, their geographic dispersion, the ability of individual members to bring suit on their own, judicial economy, and the inconvenience of trying a multitude of individual lawsuits. *Id.*; *see also Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004). A plaintiff need not show the precise number of members in the class; no magical number is necessary. *Wood River Area Dev. Corp. v. Germania Fed. Savs. & Loan Ass'n*, 198 Ill. App. 3d 445, 449-50 (5th Dist. 1990).[6] Although there is no "bright-line" test for numerosity, a proposed class of at least forty members satisfies the numerosity requirement. *Id.* at 450.

General knowledge and common-sense support Plaintiff's allegation of numerosity. That a vague, non-specific, and non-individualized junk fax was sent to Plaintiff suggests widespread

---

[6] Courts have held that a TCPA plaintiff need not identify the specific fax numbers to which faxes were sent in order to have a class certified. *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008).

distribution to what is likely thousands of members of the Plaintiff Class.  *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *3 (N.D. Ill. May 27, 2008).  Experience of Plaintiffs' counsel supports the same conclusion.  (Cordero Decl. ¶ 10.)

**B. Common Questions of Fact and Law Predominate in this Action**

The second section 2-801 element is that common "questions of fact or law" predominate over individual questions.  A single common question of either fact or law is enough.  *Miner v. The Gillette Co.*, 87 Ill. 2d 7, 17 (1981).  Generally, when all class members have been aggrieved by the same or similar misconduct, the commonality requirement is satisfied.  *P.J.'s Concrete Pumping Serv. Inc. v. Nextel W. Corp.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004).  "Once this basic determination has been made, the fact that there may be individual questions…will not defeat the predominating common question."  *Miner*, 87 Ill. 2d at 19.

The threshold for this element is low: "[T]he low commonality hurdle is easily surmounted" because the "requirement does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs."  *Kaufman v. American Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442 (N.D. Ill. 2009) (internal quotes omitted).

This case easily satisfies the minimal standard.  All class member claims arise from the same conduct.  Faxes appear to have been sent in the exact same manner to members of the Plaintiff Class.  Where, as here, the defendants have acted in the same basic way to all members of a class, common questions predominate.  *Martin v. Heinold Commodities, Inc.,* 139 Ill. App. 3d 1049, 1052 (1st Dist. 1985), *aff'd in part, rev'd in part on other grounds*, 117 Ill. 2d 67 (1987); *see also Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 446 (E.D. Mich. 2015) (common issues predominate because all class members' claims are brought under the TCPA and based on the same legal theories); *Hinman v. M & M Rental Ctr., Inc.,* 545 F. Supp. 2d 802, 806 (N.D. Ill.

2008) (mass fax broadcasts are a standardized course of conduct).

The TCPA/FCC regulations provide a basis for all class claims. *See Chapman*, 2014 WL 540250, at *11 ("Whether the fax broadcast violated the TCPA is an issue common to the class"). Under the TCPA all members are entitled to same exact relief. Because the successful adjudication of the class representative's claim will establish the right of recovery for all other class members, common questions predominate. *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003); *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1st Dist. 1991).

This case also contains many common legal issues determinable on a class basis: (1) whether the faxes that are the subject of this lawsuit are advertisements within the ambit of the TCPA and the FCC regulations; (2) whether OmniMax sent unsolicited facsimile advertisements in violation of 47 U.S.C. § 227(b)(1)(C); (3) what constitutes a willful or knowing violation of the TCPA within the meaning of 47 U.S.C. § 227(b)(3); (4) whether OmniMax committed willful and/or knowing violations of the TCPA and/or the FCC's regulations; (5) whether damages should be increased on account of OmniMax's willful and/or knowing violations and, if so, by what amount; and (6) whether the injunctive relief is appropriate. These common questions of both fact and law easily satisfy section 2-801(2).

### C. Plaintiff and Its Counsel Will Fairly and Adequately Protect the Class

This case also satisfies the adequate representation requirement. The purpose of this requirement "is merely to insure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988). The class representative's claim need not be identical to the other class members' claims; rather, it is enough that the representative not seek relief antagonistic to other class members. *Id.; see also*

*Steinberg v. Chicago Med. Sch.,* 69 Ill. 2d 320, 338 (1977). The adequacy requirements are modest—one decision described them as "quite low."[7]

Plaintiff will adequately represent and protect the interests of the class. Here, Plaintiff and the proposed Plaintiff Class have the same legal claims based on the same statutes and/or regulations and are entitled to the same relief. There is a perfect nexus between Plaintiff's claims and those of the other class members; they share the interest of proving that Defendants violated the TCPA by sending them unsolicited faxes.

Craftwood's prosecution of this case will be overseen by David Brunjes, an experienced businessman who has pursued this litigation for reasons fully consistent with the policies behind the TCPA. Mr. Brunjes was certified as a public accountant in 1976. (Brunjes Decl. ¶ 2.) From 1979 to 1988, Mr. Brunjes worked as a Corporate Audit Department Manager and then as Director of Sales & Marketing at a publicly-listed company. (*Id.* at ¶ 3.) From 1988 to the present, he has worked at Craftwood. (*Id.*)

Mr. Brunjes is committed to protecting the Plaintiff Class's interests. He believes junk faxes are a vexing problem for businesses and consumers. (Brunjes Decl. ¶ 4.) Mr. Brunjes has filed more than 280 complaints with the Federal Communications Commission ("FCC") regarding junk faxes sent to Craftwood. (*Id.* ¶ 8.) Frustrated with FCC inaction on these complaints, Mr. Brunjes is convinced that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws. (*Id.*) He understands the responsibilities of a class representative and is prepared to discharge those responsibilities here. (*Id.* ¶ 10.) Indeed, Craftwood has

---

[7] *In re AEP ERISA Litig.*, No. C2-03-67, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966) (plaintiff was adequate despite a limited understanding of English, little knowledge of the lawsuit, and did not know the nature of the alleged misconduct); *In re Ocean Bank*, 06 C 3515, 2007 WL 1063042, at *8 (N.D. Ill. Apr. 9, 2007) ("[T]he standard for serving as class representative is not particularly demanding.").

successfully prosecuted other class actions under the TCPA.   (Cordero Decl. ¶¶ 7, 11.)

Moreover, Plaintiff's attorneys are highly experienced in class actions and have handled numerous TCPA class actions.  Lead attorney Darryl Cordero has successfully prosecuted numerous junk fax cases over the past decade, including the record $40 million *Interline Brands* recovery in this district.  (Cordero Decl. ¶¶ 6, 7.)  He and his colleagues have the experience, knowledge and resources to adequately represent and protect the interests of this putative class.  (*Id.* ¶¶ 4-9.)

### D.     A Class Action Provides the Best Means for Fair and Efficient Adjudication of Class Members' Claims

Where, as here, the first three requirements of section 2-801 have been satisfied, it is "manifest that the final requirement of the statute [also] is fulfilled." *Steinberg*, 69 Ill. 2d at 339; *see also P.J.'s Concrete Pumping Serv.*, 345 Ill. App. 3d at 1004; *Clark*, 343 Ill. App. 3d at 552. In assessing the fourth requirement of section 2-801, the court may also consider "whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203.  In addition, class treatment is found appropriate when it provides the only practical means to provide redress to all class members.  *Id.*

The strong weight of authority favoring certification of TCPA classes reflects a straightforward application of the policy objective behind the class action—to encourage individuals, who may otherwise lack incentive to file individual actions, to join with others to vindicate their rights. *Hansberry v. Lee*, 311 U.S. 32, 41 (1940).  As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit*

*Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). The majority of courts have certified TCPA classes precisely because they fit this paradigm. *Overlord Enters.*, 2006 WL 4591049, at *8.

Illinois federal courts have held that "proceeding as a class is a superior method of adjudicating TCPA violations..." *Mussat*, 2013 WL 1087551, at *7; *see also Emery*, 2016 WL 3402621, at *7 ("deciding each [junk fax] claim separately would be an extremely inefficient use of both judicial and party resources"). Mass fax-blasting programs impact literally thousands. As one court stressed in certifying another TCPA class, "resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Hinman*, 545 F. Supp. 2d at 807. Class prosecution is "more likely to accomplish the TCPA's purpose of eliminating a 'scourge on our society' than would restricting TCPA enforcement to individual actions, in the face of which junk faxers might consider a few thousand dollars' worth of enforcement actions to be a fair cost for intrusive and unwanted advertising directly into people's homes or offices." *Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 310 (D. Md. 2014); *see also Costco Wholesale*, 2017 WL 1907764, at *6.

Here, the economics of litigation make class adjudication the ***only*** practical means to hold Defendants accountable for their violations of law. Because the TCPA lacks an attorneys' fees clause, individual litigants would sustain legal fees far exceeding their expected recovery at only $500 per fax transmission or, even less likely, find lawyers willing to prosecute individual claims on a contingency basis. Only by aggregating their claims can businesses impacted by Defendants' junk faxes effectively challenge Defendants' systematic violations of federal law. *See Mussat*, 2013 WL 1087551, at *7; *see also Mims*, 132 S. Ct. at 753 ("How likely is it that a

party would bring a $500 claim in, or remove a $500 claim to, federal court?").

Private class actions are vital to effective enforcement of the law. As the Seventh Circuit has stressed, "A class action, like litigation in general, has a deterrent as well as a compensatory objective." *Hughes v. Kore of Indiana Enters., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013). The FCC, with its limited resources, has been unable to staunch the tide of junk faxes, as demonstrated by Plaintiff's own experience with Defendants and other advertisers. (*See* Brunjes Decl. ¶¶ 8, 9.) The act fixes a form of bounty system, designed to encourage victims to enforce the law. *See Turza*, 728 F.3d at 688; *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665 (7th Cir. 2001). But if "only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability." *Critchfield*, 263 P.3d at 780.

Certification would also promote the public interest, as "[a] class action serves to educate individuals about their rights as well as protect those rights." *ESI Ergonomic Solutions, LLC v. United Artists Theatre Cir., Inc.*, 50 P.3d 844, 848 (Ariz. Ct. App. 2002) (certifying TCPA class). Indeed, individual lawsuits often are not brought because victims are unaware of their rights under federal law. *See Mace*, 109 F.3d at 344. This objective is particularly important here because Defendants violated the law's requirement that it inform recipients of their legal right to stop junk faxes. Denying recipients the opportunity to vindicate their rights on a class-wide basis would—perversely—reward Defendants for their failure to inform victims of their rights.

## Conclusion

This is the paradigm case for class treatment. The proposed class is numerous with claims too small to warrant individual prosecution. The common questions of fact and law are case-dispositive and predominate. Plaintiff's claims are identical to those of other class members

and Plaintiff will fulfill its duties as class representative. Plaintiff has retained counsel well qualified to represent the class. As a practical matter, this action is the only way members will ever obtain relief. Judicial economy and uniformity will be well-served by certifying this class.

DATED: February 25, 2021

TROBE, BABOWICE & ASSOCIATES, LLC

_____/s/  Peter Trobe_____

Peter Trobe [Illinois Bar No. 2857863]
Email: ptrobe@tbalaws.com
404 West Water Street
Waukegan, Illinois 60085
Telephone: (847) 625-8700

Attorneys for Plaintiff Craftwood Lumber Company, on behalf of itself and all others similarly situated

14

**FILED**
**2/26/2021 1:21 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation,<br><br>      Defendants. | Case No.   21CH00000090 |

**Declaration of David W. Brunjes in Support of**
**Plaintiff's Protective Motion for Class Certification**

I, David W. Brunjes, state the following to be true of my own personal knowledge, information and belief:

1.     I am President of Craftwood Lumber Company ("Craftwood"), the named plaintiff in this action.  Craftwood, an Illinois corporation, does business under the name "Craftwood Lumber & Hardware" from its Highland Park store.  Craftwood is one of the larger hardware stores in Illinois, and serves primarily the North Shore area.  I, together with my wife, Cynthia Brunjes, own and operate Craftwood.

2.     I attended the University of Illinois, School of Business Administration, and majored in accountancy.  I received my bachelor of science degree from that institution in 1976. In 1976, I was certified as a public accountant in Illinois.  I retain my membership as a certified public accountant, but I currently do not practice public accounting.

3.     From 1976 to 1979, I worked in the audit department of Coopers & Lybrand. From 1979 to 1988, I worked for Mark Controls Corporation, a publicly listed company, and several of its units, starting as Corporate Audit Department Manager and concluding my employment as Director of Sales & Marketing (FlowSeal, a unit of Mark Control Corporation). From 1988 to the present, I have worked at Craftwood.

4.     I caused Craftwood to bring this lawsuit and request appointment as a class representative because of our desire to stop, as much as possible, junk faxes and to obtain monetary and other relief for the class.  I believe junk faxes are a vexing problem for businesses and consumers.  Junk faxes disrupt our business operations, require someone to go through them

to dispense with them, and force us to consume paper, toner, and electricity against our wishes.

5.    For many years Craftwood has been the subscriber of the telephone number (847) 831-2805. Throughout this time, that telephone number has been connected to a fax machine located in our office. On a regular basis we receive, at this fax machine, unsolicited faxes of an advertising nature from persons and companies with whom we do not do business.

6.    On August 13, 2018, Craftwood received a junk fax promoting the sale of Berger and Amerimax branded trim coil, drip edge, copper pipe and gutter lengths, and gutter guards—a true and correct copy of which is attached hereto as **Exhibit A**. This fax was sent to Craftwood's facsimile telephone number (847) 831-2805 and told us that this "SUMMER SIZZLER PROMOTION!" was available "Monday, August 13 through Friday, August 17, 2018".

7.    To the best of my knowledge, information and belief, after making reasonable inquiry, Craftwood did not give prior express permission to be sent the August 13, 2018, fax or any other OmniMax branded facsimile advertisements.

8.    I have responsibility for dealing with junk faxes received by Craftwood. I have filed more than 280 complaints with the Federal Communications Commission ("FCC") regarding junk faxes sent to Craftwood. To my knowledge the FCC has not taken any action in connection with any of Craftwood's complaints. My experience has convinced me that the only way to stop junk faxes is by legal action to enforce the anti-junk fax laws.

9.    Craftwood has served as class representative in other TCPA/junk fax lawsuits.

Between 2011 and 2015, Craftwood prosecuted TCPA claims against Interline Brands, Inc., in the Northern District of Illinois. In late 2014 the company negotiated a $40 million class-wide settlement, which was approved by Federal District Judge Amy J. St. Eve in March 2015. Commencing in 2014, Craftwood prosecuted claims for sending junk faxes in violation of the TCPA against Senco Brands, Inc. In late 2016, the company and its attorneys negotiated a $3 million class-wide settlement of that litigation, which was given final approval in June 2017 by the Hon. John Robert Blakey of the Northern District of Illinois. In 2017 the company and its attorneys negotiated a $11.75 million class-wide settlement against Hardware Resources, Inc., in this Court, which was given final approval by the Hon. Luis A. Berrones in October of that same year. Most recently, in 2019, Craftwood (along with two other plaintiff class representatives) obtained a $3 million class settlement, which was granted final approval in August of last year by Judge Stacey L. Seneczko of this Circuit Court.

10.     I recognize Craftwood's responsibilities as a class representative to fairly and adequately protect the interests of the class members in the case. I am prepared to discharge those responsibilities in the interest of the proposed class. I am committed to keeping abreast of developments in the case and to exercise my independent judgment in order to discharge Craftwood's duties as class representative. Craftwood also will not place its interests ahead of the interests of the class members. I know of no antagonistic or conflicting interests between Craftwood and class members.

11.     Neither Craftwood nor I have been provided any financial consideration to prosecute this case, nor have we been promised any such consideration. I understand that if there is a successful class recovery Craftwood, as class representative, may request an incentive award,

but that any incentive award is entirely discretionary with the Court. I understand and accept that, aside from any incentive award and any recovery shared with members of the class, Craftwood cannot receive any additional award, monies, or other benefits in connection with, or arising out of, the case. I also understand that if there is a successful class recovery, Craftwood's attorneys will ask the Court for payment of their fees and costs incurred in rendering services to Craftwood and the class.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on February 25, 2021, at Highland Park, Illinois.

David W. Brunjes

5

# EXHIBIT A

13-Aug-2018  20:51    From 888-440-4597 To 18470312805              800-440-4597              p.1

 

QUALITY BUILDING PRODUCTS SINCE 1874

# SUMMER SIZZLER PROMOTION!

Effective Monday, August 13 through Friday, August 17, 2018

## $1.00 Off Per Roll of Smooth 24" x 50' Trim Coil any quantity

## 5% off all Drip Edge

## 5% off all Copper Pipe and Gutter Lengths

## 10% off TitanGuard™ Gutter Guard

  

** All Discounts are in addition to existing volume discounts **

** All orders must ship by August 24, 2018 to qualify **

FILED
2/26/2021 1:21 PM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

**IN THE CIRCUIT COURT OF LAKE COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| Craftwood Lumber Company, an Illinois corporation, individually and as representative of all others similarly situated, | Case No. 21CH00000090 |
| Plaintiffs, | |
| v. | |
| OmniMax International LLC, a Delaware Limited Liability Company; OmniMax International, Inc., a Delaware Corporation, | |
| Defendants. | |

**Declaration of C. Darryl Cordero in Support of
Plaintiff's Protective Motion for Class Certification**

I, C. Darryl Cordero, declare:

1.     I am an attorney duly licensed to practice in the states of California and Washington, and partner of the law firm Payne & Fears LLP. I represent Plaintiff and proposed class representative, Craftwood Lumber Company ("Craftwood" or "Plaintiff") in this action. The facts stated in this declaration are of my own personal knowledge and, if called and sworn as a witness, I could and would competently testify with respect thereto. This declaration is submitted in support of Plaintiff's Protective Motion for Class Certification.

2.     This declaration explains why we have filed an early motion for class certification, addresses my background and experience handling complex litigation, including class actions for violations of the federal anti-junk fax law, and my commitment to prosecute this case vigorously on behalf of the proposed class.

**Craftwood's Motion Protects Against Potential Defense "Pick-Off" Attempts**

3.     The purpose of Plaintiff's motion is to protect against a potential pick-off attempt by the Defendant in an effort to avoid class-wide accountability. The Illinois Supreme Court has held that defense pick-off attempts are ineffective to moot a plaintiff's claims if the plaintiff has filed a motion for class certification.[1] We have therefore filed this motion out of an abundance of caution to place Plaintiff within this safe harbor. I believe, however, that discovery is needed to have a developed record for an informed class certification decision, and for that reason ask the Court to continue hearing and further briefing on the motion following a period of discovery.

---

[1]     *Ballard RN Ctr., Inc. v. Kohll's Pharmacy and Homecare Inc.*, 48 N.E.3d 1060, 1067-1068 (Ill. 2015).

**Counsel's Legal Background and Experience in Junk Fax Class Actions**

4.     I am an attorney with almost 40 years' litigation experience. After graduating from Harvard Law School in 1981, I served as law clerk to the Hon. Harry Lee Hudspeth, United States District Judge for the Western District of Texas. I am admitted to practice before the United States Supreme Court, the United States Court of Appeals for the Second, Seventh, and Ninth Circuits, all federal district courts in the State of California, the United States District Court for the Northern District of Illinois, and the United States District Court for the Eastern District of Wisconsin. I have been lead counsel in complex litigation in federal and state courts throughout the country and coordinating counsel for reinsurance litigation in Bermuda.

5.     I am a business litigator. My practice concentrates on complex, high-stakes litigation, and is national in scope. I have represented clients in litigated matters in California, Florida, Illinois, Missouri, New Mexico, New York, New Jersey, and Wisconsin. I also have represented clients in connection with legal disputes in courts outside the United States. I have considerable experience in antitrust, RICO, health care, and complex insurance disputes of all types (insurance coverage, insurance program disputes, reinsurance, reinsurance brokerage, and managing general agent issues).

6.     For about 30 years I have served as counsel in class action litigation over a wide range of subject matters, including consumer cases. Since 2006 I have served as lead counsel in several major actions for violation of the federal anti-junk fax law, the Telephone Consumer Protection Act of 1991, and the regulations promulgated under that act by the Federal Communications Commission.

7.     In recent years, I have served as lead class counsel in the following TCPA matters, among others:

      a.      Between 2012 and 2014, I prosecuted a TCPA class case against Tomy International in the Central District of California. (*Craftwood II, Inc., dba Bay Hardware, v. Tomy Int'l, Inc.*, No. SACV12-1710DOC(ANx), U.S. Dist. Ct., Cent. Dist. Cal.) After two years of litigation I negotiated a $10 million settlement, which was approved by the Honorable David O. Carter on March 3, 2015.

      b.      In 2014, I obtained a record $40 million class settlement in the Interline Brands junk fax class litigation in the Northern District of Illinois. (*Craftwood Lumber Co. v. Interline Brands*, No. 1:1-cv-04462, U.S. Dist. Ct. N. Dist. Ill.) On March 23, 2015, the settlement was granted final approval by the Honorable Amy J. St. Eve. I believe based on my practice experience that this was the largest dollar recovery in any junk fax case in the history of the TCPA.

      c.      In 2014, I negotiated a $15 million class recovery in the PharMerica junk fax class action (*Pines Nursing Home (77) Inc. v. PharMerica Corp.*, No. 1:13-23924-CIV-MOORE/TORRES). The settlement received final approval from the Honorable K. Michael Moore, Chief Judge of the Southern District of Florida, in November 2015.

      d.      I served as lead counsel in litigation challenging "Polaris Group" junk faxes in the United States District Court for the Eastern District of California. (*R. Fellen, Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM.) In September 2017, the Honorable Dale A. Drozd entered an order granting final approval of a $25 million class-wide settlement.

      e.      In 2017 I negotiated a mediated settlement in the amount of $11.75 million in the *Hardware Resources* junk fax class action in this Court, involving over 51,000 transmissions to thousands of class members nationwide. (*Craftwood Lumber Co. v. Hardware Resources, Inc.*, No. 16 CH1353.) In October 2017, the Hon. Luis A. Berrones granted final

approval to the class settlement.

f. In late 2019, I negotiated a $3 million class settlement on behalf of Craftwood Lumber Company (and two other plaintiffs and class representatives) in junk fax litigation against Horizon Global Corporation, Horizon Global Americas, Inc., and Comprehensive Marketing, Inc., in this Court. (*Craftwood Lumber Co., et al. v. Horizon Global Corp., et al.*, No. 17CH1213.) In August 2020, the class action settlement was granted final approval by the Hon. Stacey L. Seneczko.

8. Based on the above, I believe that I have the experience, knowledge and resources available to me to adequately represent and protect the interests of the putative class in this case. My firm, Payne & Fears LLP, is a firm of about 50 attorneys in six offices. The firm and I are committed to prosecuting this case diligently on behalf of the putative class, as we have in numerous other class prosecutions under the TCPA.

9. In the *Hardware Resources* and *Horizon Global* cases, Peter M. Trobe of Trobe Babowice & Associates LLC was a key member of our legal team. I worked extensively with Peter in these cases, and I know him to be a highly intelligent and experienced class action litigator, and former judge. He has been retained again as co-counsel in this case. In my opinion, he has far more than the minimum qualifications needed to serve as co-counsel for Craftwood and the putative class.

10. In my experience, copies of fax advertisements received and retained by the class representative are always the "tip of the iceberg" in terms of the number of fax advertisements sent by defendants during the class period. For example, in the *TOMY* case, referenced earlier in this declaration, plaintiff had retained only one copy of a fax advertisement. Through discovery, however, we ascertained that 159 fax advertisements had been sent during the class period in at

least 113,000 facsimile transmissions. In the *Interline Brands* case, only two junk faxes were sent to Craftwood Lumber Company. Through discovery, however, we ascertained that Interline sent more than 750,000 facsimile transmissions of over 1,500 junk fax advertising campaigns during the class period.

### Craftwood's Prior Service as Class Representative

11.    I worked closely with David W. Brunjes in several junk fax class cases, including many of those referenced above. I believe that he, on behalf of Craftwood, fully performed the obligations of the class representative in those cases. For example, in *Interline Brands*, no class member objected to the settlement, and only a handful of class members requested exclusion. On March 23, 2015, Judge Amy J. St. Eve of the Northern District of Illinois entered an order awarding Craftwood an incentive award of $25,000, the full amount requested, in recognition of its initiative and efforts in prosecuting the case on the class's behalf.

12.    I declare under penalty of perjury under the laws of the state of Illinois that the foregoing is true and correct. Executed on February 22, 2021, at Indian Wells, California.

C. Darryl Cordero