# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRAFTWOOD LUMBER COMPANY,<br>    Plaintiff<br><br>    v.<br><br>OMNIMAX INTERNATIONAL LLC,<br>and OMNIMAX INTERNATIONAL,<br>INC.,<br>    Defendants | No. 21 CV 1768<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Craftwood Lumber Company, brought a one-count lawsuit against the defendant, OmniMax International, Inc.,[1] alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (R. 1.)[2] Specifically, the plaintiff alleges that the defendant sent it three unsolicited advertisements in violation of the statute. Now before the Court is the plaintiff's motion for summary judgment as to those three faxes. For the reasons that follow, summary judgment as to the March 2017 fax is granted, and is denied as to the April 2018 and August 2018 faxes. Further, summary judgment on the issue of treble damages is granted as to the March 2017 fax, and is denied as to the April 2018 and August 2018 faxes.

---

[1] OmniMax International LLC merged with its co-defendant, OmniMax International, Inc. (R. 122 (Defendant's Response to Plaintiff's Statement of Undisputed Material Facts In Support Of Motion For Summary Judgment ("Def. Resp. to PSOF")) ¶ 3.) For the purposes of this Order, the Court will refer to these parties as one defendant.

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions, the materials cited therein, and other aspects of the record in this case.[3] Disputed facts are noted.

The plaintiff "is a family-owned corporation that operates a local hardware store in Highland Park, Illinois." (Def. Resp. to PSOF ¶ 1.) The defendant is in the business of manufacturing aluminum, steel, vinyl, and copper products. (*Id.* ¶ 4.) It owns several brands, including, as relevant here, Amerimax. (*Id.*)

From 2011 to 2019, the plaintiff placed eleven orders for the defendant's products. (*Id.* ¶ 20.) These orders were documented via sales order or purchase order. (*Id.* ¶ 22.) On at least one purchase order, dated September 6, 2013, the plaintiff's fax number, ending in -2085, was in the fax header (*Id.* ¶¶ 18, 25.) This is the "earliest evidence or record of [the defendant] obtaining [the plaintiff's] fax number[.]" (*Id.* ¶ 24; R. 110-20.)

However, according to the plaintiff, the defendant impermissibly used this fax number not just for the agreed upon sales between the parties, but to send unsolicited advertisements. (*See, e.g.*, R. 108 at 7.) The defendant's process for sending out fax advertisements was this: they hired an outside marketing company, RLM

---

[3] Plaintiff Craftwood Lumber Company's Statement of Undisputed Material Facts In Support of Its Motion For Summary Judgment, (R. 110 ("PSOF")); Def. Resp. to PSOF, (R. 122); Defendant's Statement of Additional Material Facts In Opposition To Plaintiff's Motion For Summary Judgment, (R. 123 ("DSOAF"); Response To Defendant's Statement of Additional Material Facts In Opposition To Plaintiff's Motion For Summary Judgment, (R. 125 ("Pl. Resp. to DSOAF")).

Advertising, Inc. ("RLM"), to send advertisement faxes on its behalf. (Def. Resp. to PSOF ¶ 10.) The defendant would send RLM the advertisement to be sent, "along with the distribution list and the accompanying contact information." (*Id.* ¶ 11.) Once the fax had been sent, RLM "provided [the defendant] with a fax report indicating" which faxes were successfully transmitted to certain fax numbers. (*Id.* ¶ 16.) It is disputed as to whether the defendant had permission to send out these fax advertisements; the parties disagree as to what it means to have permission under the law. (*See, e.g.*, *id.* ¶¶ 26, 28, 30, 32, 34–35.)

At issue in this case are three faxes that the plaintiff asserts were sent in violation of the TCPA: the March 17, 2017 fax ("March 2017"), the April 23, 2018 fax ("April 2018"), and the August 13, 2018 fax ("August 2018"). (*See, e.g.*, R. 108 at 7–9.)

**March 2017**

In March 2017, the defendant created a flyer for copper flashing, sold by Amerimax. (Def. Resp. to PSOF ¶ 40.) In bold letters at the top of the flyer, it reads "STOCK UP AND SAVE." (*Id.* ¶ 41; R. 110-9 at 2.) Next to that, it reads "10% Off Laminated Copper Flashing" with an effective date of March 1, 2017 through April 30, 2017. (R. 110-9 at 2.) The flyer includes a list of items, accompanied by the items' descriptions, as well as the current and "promo" price. (*Id.*; Def. Resp. to PSOF ¶ 41.) "The document included no opt-out notice or information as to how a recipient could remove itself from [the defendant's] fax distribution list." (Def. Resp. to PSOF ¶ 42.) This fax was sent to the plaintiff on March 17, 2017; the plaintiff received it via the -2805 fax number. (*Id.* ¶ 46.)

3

**April 2018**

In April 2018, the defendant prepared a flyer regarding rising prices of its aluminum products. (*Id.* ¶¶ 50–51.) The flyer, formatted as a letter, is addressed to a "Valued Business Partner." (R. 113-3 at 3.) The letter states that because costs of aluminum have risen 25%, the defendant "must react and are announcing a 10% price increase on all aluminum products effective May 21, 2018." (*Id.*; Def. Resp. to PSOF ¶ 51.) Like the March 2017 fax, there was no opt-out notice included in the letter. (Def. Resp. to PSOF ¶ 52; *see also* R. 113-3 at 3.) This letter was sent to the plaintiff, and received at the -2805 number on April 23, 2018. (*Id.* ¶ 53.)

**August 2018**

"In August 2018, [the defendant] had overstocked inventory, including products such as 'Titan Gutter Guards,' 'Trim Coil,' and 'drip edge.'" (*Id.* ¶ 58 (citing R. 110-27).) Lisa Reyes, a sales coordinator for Amerimax, (R. 110-27 at 2)—and the defendant's Rule 30(b)(6) witness—designed a document that, according to the plaintiff, stated "SUMMER SIZZLER PROMOTION." (Def. Resp. to PSOF ¶ 60.) The flyer lists several available discounts, and like the other two documents already discussed, it did not include an opt-out notice. (*Id.*) The plaintiff states that the fax was successfully transmitted to it at the -2805 fax number. (*Id.* ¶ 62.) However, the plaintiff neglected to attach the "Summer Sizzler Promotion" document to its motion for summary judgment. (*See* R. 124 at 12, n. 6 (acknowledging "inadvertent" failure to attach exhibit reflecting August 2018 fax, but also failing to attach the fax).)

4

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is 'material' if it is one identified by law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). If a reasonable jury, when viewing the record and all reasonable inferences from it in the light most favorable to the nonmovant, could return a verdict for the nonmovant, then a genuine dispute of material fact exists." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the Court "construe[s] all facts and draw[s] all reasonable inferences in the nonmoving party's favor[.]" *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citations omitted).

## ANALYSIS

Under the TCPA, it is "unlawful" to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). "'[U]nsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § (a)(5). Put another way, "[a]n unsolicited fax advertisement under the TCPA is [ ] a fax that promotes the sale of a good, service, or property, with profit as an aim, by drawing attention to the fact that the good, service, or property is available for purchase or of a desirable quality."

5

*Smith v. First Hosp. Labs., Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). Further, the Seventh Circuit has explained that "the fax itself must indicate—directly or indirectly—to a reasonable recipient that the sender is promoting or selling some good, service, or property. In other words, the 'material . . . which is transmitted'— the faxed document—must perform the advertising." *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health, Inc.*, 74 F.4th 829, 832 (7th Cir. 2023).

The plaintiff contends that the March 2017, April 2018, and August 2018 faxes were "unsolicited advertisements" as described by the statute. (*See, e.g.*, R. 108 at 9–11.) The defendant disagrees. (*See, e.g.*, R. 121 at 13–17.) The Court addresses each fax in turn.

    **I.**    **MARCH 2017 FAX**

The plaintiff argues that the March 2017 fax is "undisputedly [an] advertisement[ ]" because it "promote[s] the commercial availability of property, goods, or services, of [the defendant]." (R. 108 at 10 (quotations omitted).) The defendant counters that the plaintiff has failed to show that "there is no genuine issue of material fact whether the fax constitutes an 'advertisement.'" (R. 121 at 15.) It says nothing more about the March 2017 fax's status as an advertisement, instead focusing its analysis of this issue on the April 2018 fax (discussed below).

Looking at the March 2017 fax, it is clear that this document qualifies as an advertisement. (*See* R. 110-26 at 7.) The fax promotes the availability of laminated copper flashing. (*Id.*) It advises the consumer to "stock up and save," offering a ten percent discount on the copper flashing. (*Id.*) It includes a table, listing each item, a description of the item, the current price, and the promotional price. (*Id.*) A

6

reasonable recipient would see that this is a fax "promot[ing] the sale of a good" which "draw[s] attention to the fact that the good . . . is available for purchase[.]" *Smith*, 77 F.4th at 607. Thus, the March 2017 fax qualifies as an advertisement.

Now, the Court must consider whether the March 2017 fax was "unsolicited" within the meaning of the TCPA. As mentioned, an "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or permission*, in writing or otherwise." *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 290 (7th Cir. 2018) (quoting § 227(a)(5)) (emphasis in original). While there are exceptions "to the prohibitions on sending unsolicited faxes," *id.* (citing 227(b)(1)(C)(i)–(iii)), the defendant cannot take advantage of those here because it admits that there was no opt-out notice in the March 2017 fax, (Def. Resp. to PSOF ¶ 42); *see also Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 964 (7th Cir. 2020) (noting that defendant could not take advantage of the "established business safe harbor" because it was missing the opt-out notice requirement). "Consequently, [the defendant] may avoid liability for the [March 2017 fax] only if it had prior express permission or invitation to send the fax in question[.]" *Physicians Healthsource*, 950 F.3d at 964. It is the defendant's burden to prove that it had such permission. *Id.*

The defendant argues that the plaintiff "voluntarily provided the -2805 fax number to [the defendant] on multiple occasions[.]" (R. 121 at 11.) It further asserts "that each of the three faxes at issue that [the defendant] allegedly sent to [the

7

p]laintiff related to a product or material that [the p]laintiff had purchased or used in connection with its business[.]" (*Id.*) Therefore, "because [the defendant's] faxes to [the plaintiff] 'related to the reason the number was provided' to [the defendant], 'consent is valid[.]'" (*Id.* (citations omitted).) The plaintiff disagrees. According to the plaintiff, "[t]here is no evidence of any kind that [the defendant] obtained prior express permission to send [the plaintiff] fax ads[.]" (R. 108 at 16.) In fact, the plaintiff argues, it expressly did not give such permission—though the defendant disputes this. (Def. Resp. to PSOF ¶¶ 38, 45, 64.) "At best," the plaintiff contends, "[the defendant] merely had in its possession [the plaintiff's] fax number," which does not equate to permission to fax advertisements. (R. 108 at 17.)

Relying on guidance from the Federal Communications Commission ("FCC"), the Seventh Circuit has said that express permission "to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements." *Physicians Healthsource*, 950 F.3d at 965 (quoting *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14129 (2003) ("2003 FCC Rule"). "[T]he sender may not presume permission unless otherwise advised[.]" *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1126 (7th Cir. 2023). "'[N]egative options,' in which a sender presumes consent unless advised otherwise"—*i.e.*, a fax advertisement that instructs the recipient to inform the sender if it no longer wants to receive faxes—"are insufficient to prove express permission." *Physicians Healthsource*, 950 F.3d at 965 (citing 2003 FCC Rule at 3811, n.168). Put bluntly, to establish prior express permission, "the consumer

8

must affirmatively and explicitly give the advertiser permission to send it fax advertisements on an ongoing basis . . . [the permission] must explicitly convey that the consumer gives the advertiser ongoing permission to send ads via fax until such time as the consumer withdraws its consent." *Id.* at 966. "A consumer's statement that it gave permission to send 'product information' via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission." *Id.* at 967.

With this precedent, the defendant's argument that its faxes to the plaintiff "related to the reason the number was provided to [the defendant]" is not persuasive. (R. 121 at 11.) The fact that the defendant received the fax number via, for example, a purchase order sent in 2013, (*id.*; R. 125 ¶ 3) is not express permission. And though the defendant disputes the plaintiff's asserted facts regarding the lack of permission to send the fax advertisements, (*see* Def. Resp. to PSOF ¶¶ 32–38), it does not put forth any evidence that demonstrates that the plaintiff "affirmatively and explicitly g[a]ve [the defendant] permission to send [the plaintiff] fax advertisements on an ongoing basis." *Physicians Healthsource*, 950 F.3d at 966. The basis of the defendant's objections to the plaintiff's statement of facts repeats the argument from their brief, that it had permission to send the faxes because "[the plaintiff] did business with [the defendant] and voluntarily provided the -2085 fax number to [the defendant] on multiple occasions, and because the faxes that [the defendant] sent to [the plaintiff] related to a product or material that [the plaintiff] had purchased or used in connection with its business[.]" (*See, e.g.*, Def. Resp. to PSOF ¶ 35.) This is not

9

enough.[4] Nor is the evidence the defendant puts forth to support the assertion that its customers "voluntarily and affirmatively provided their contact information to [the defendant], including their fax numbers" compelling. For instance, the defendant cites the deposition testimony of Lisa Reyes. (R. 123-2.) But all Reyes' testimony does is confirm that "permission to send fax ads" was not something the defendant "looked at in selecting customers to send faxes too," that the customers who received faxes were "typically" customers "that have already bought product that are in [the defendant's] systems," and that the defendant "didn't know about this TCPA." (*Id.* at 70:4–19.) She also testified, "I can't comment on that" in response to the question of whether anyone asked for "express permission from a customer to send it fax ads[.]" (*Id.* at 70:20–23.) This is not evidence that creates a genuine dispute as to whether express permission to receive advertisements via fax was given.

Because the defendant failed to put forth evidence that suggests it had prior express permission to use the plaintiff's fax number for advertisements, summary judgment with respect to the March 2017 advertisement in favor of the plaintiff is appropriate.

## II. APRIL 2018 FAX

Whether the April 2018 fax qualifies as an advertisement is a more complicated question that the Court cannot resolve at summary judgment. Unlike

---

[4] The defendant's objection citations in support of this argument fare no better. The documents cited do not indicate anywhere that the defendant received express prior permission from the plaintiff to send advertisements via fax. (*See, e.g.*, R. 110-9; R. 110-20; R. 110-26; R. 113-3; R. 122-3.) Indeed, in its own exhibit, (R. 122-3), the plaintiff's President David Brunjes states that the defendant had permission "[t]o send business faxes, not advertising faxes." (*Id.* at 194:20–23.)

the March 2017 advertisement, the April 2018 fax "on its face is not an overt advertisement[.]" *James L. Orrington, II, D.D.S., P.C. v. Scion Dental, Inc.*, No. 17 C 884, 2019 WL 4934696, at *2 (N.D. Ill. Oct. 7, 2019) (quotations omitted). Indeed, the April 2018 fax takes the form of a letter addressed to a "valued business partner." (R. 113-3 at 3.) The letter explains that due to "recent sanctions" aluminum prices have surged. (*Id.*) As a result, the fax states that the defendant intends to increase prices on aluminum products by ten percent. (*Id.*)

When a fax on its face is not an overt advertisement, "courts in this district have typically then looked to whether the fax is a pretext to an advertisement." *Scion*, 2019 WL 4934696, at *3. To aid in this analysis, this district's courts have relied on the FCC's guidance, which "provides exceptions for both informational and transactional faxes[.]" *Id.* at *4. So, for instance, according to the FCC, a fax that "contain[s] only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules." *Id.* (quoting *Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967, 25973 (May 3, 2006) ("2006 FCC Rule")) (emphasis and quotations omitted).

The question here is whether the April 2018 fax promotes the sale of a product, *see Smith*, 77 F.4th at 608 ("We agree that a fax is an unsolicited advertisement only if it promoted the *sale* . . . of goods, services, or property." (emphasis in original)), or whether it "contain[s] only information," *see Scion*, 2019 WL 4934696, at *4 (quoting 2006 FCC Rule at 25973) (quotations omitted) (emphasis in original). In the plaintiff's

11

view, this fax "actively announces the availability of aluminum products in [an] attempt to sell those products by identifying scarcity and advantage." (R. 108 at 10.) From the defendant's perspective, the fax is "actually a one-page letter that [the defendant] sent only to current customers" with an "informational" "primary purpose." (R. 121 at 15.) That informational purpose is to let customers know that "due to the raw material price increase for aluminum, [the defendant] was having to 'implement a 10% price increase on all aluminum products.'" (*Id.* at 15–16 (citing Pl. SOF ¶ 51 and R. 113-3).)

      This is a fact dispute the Court cannot resolve at this stage. On the one hand, a reasonable recipient of the fax may read this as indirectly promoting the sale of aluminum products. *See Ambassador*, 74 F.4th at 832. The warning that a price hike is coming implies that there is aluminum available for sale. *See Smith*, 77 F.4th at 607. On the other hand, a reasonable recipient may read the April 2018 fax as the defendant intends: a letter that contains only information about recent news in the aluminum industry with "nothing . . . sold or offered[.]" *Scion*, 2019 WL 4934696, at *4–5. Construing all inferences in the nonmovant's favor, the question of whether this document is in fact an advertisement must go to a fact finder. Because the Court cannot determine whether the April 2018 fax is an advertisement, it cannot take the next step of determining whether it was unsolicited. Therefore, summary judgment as to the April 2018 fax is denied.

### III. AUGUST 2018 FAX

In a footnote,[5] the defendant argues that the plaintiff's failure to attach the August 2018 fax to its summary judgment materials is grounds for denial of the motion. (R. 121 at 17, n.9 (citing L.R. 56.1(a)(2)–(3)).) The plaintiff does not dispute that it neglected to attach this crucial evidence, nor does it attach it in its reply; the plaintiff instead suggests to the Court that summary judgment may still be granted because "[t]he fax is directly quoted" in its statement of facts, and it is in the record as an attachment to the complaint. (R. 124 at 12, n.6.) But at the summary judgment stage, "[a]ll evidentiary material . . . must be included as numbered exhibits with the statements of fact." L.R. 56.1(d)(e).[6] Because the plaintiff "inadvertently omitted" the August 2018 fax, (*see* R. 124 at 12, n.6), the Court does not find it appropriate to grant summary judgment on this issue. Therefore, the plaintiff's motion as to the August 2018 fax is denied.

### IV. TREBLE DAMAGES

Finally, the plaintiff argues it is entitled to treble damages for the defendant's violations of the TCPA because they were "willful" and "knowing." (R. 108 at 13–14.) Seeing as the Court has only granted summary judgment as to the March 2017 fax,

---

[5] Ordinarily, arguments in footnotes are waived. *See Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016). But the plaintiff did not make that argument, and responded to the defendant's footnote argument in a footnote of their own. (R. 124 at 12, n. 6.)

[6] The Seventh Circuit has "repeatedly held that requiring strict compliance with Rule 56.1 is not an abuse of the district court's discretion." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (citing *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)).

13

the Court will only consider whether the plaintiff is entitled to treble damages with regards to that fax; the motion is denied as to the April and August 2018 faxes.

"The TCPA authorizes a private plaintiff to sue to 'recover monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater.'" *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 879 (N.D. Ill. 2024) (quoting 47 U.S.C. § 227(c)(5)(B)). However, if the Court finds "that the defendant willfully or knowingly violated the regulations," it may, "in its discretion," award treble damages. § 227(c)(5). "Willfully" or "knowingly" is not a defined term in the TCPA. *See Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 6699188, at *7 (N.D. Ill. Dec. 9, 2019), *amended* 2021 WL 4026978 (N.D. Ill. Mar. 8, 2021). And as of this writing, the Seventh Circuit has not weighed in on what it means for an action to be "willful and knowing" in the context of the TCPA. *Hossfeld*, 726 F. Supp. 3d at 880. However, "[d]istrict courts in the Seventh Circuit 'generally have interpreted [willful or knowing] to mean voluntary, intentional, actions and not to require specific knowledge that the action constitutes a violation of the TCPA.'" *Id.* (quoting *Bakov*, 2019 WL 6699188, at *7) (collecting cases) (alteration in original). The Court is persuaded by this interpretation and likewise adopts it.

The defendant argues that there is "no evidence here that [it] knew or intended to send an *unsolicited* fax." (R. 121 at 20 (citations and quotations omitted) (emphasis in original).) In the defendant's view, the fact that the plaintiff "voluntarily provided the -2805 fax number to [the defendant] on multiple occasions," and that the faxes were "related to a product or material that [the p]laintiff had purchased or used in

14

connection with its business" means that there cannot be a "'willful or knowing' violation of the TCPA." (*Id.*) But the definition of "willful or knowing" the Court adopts—in line with other courts in this district—"does not require a showing 'that [the] defendant must have known that the conduct would violate the [TCPA].'" *Hossfeld*, 726 F. Supp. 3d at 880 (quoting *Bakov*, 2019 WL 6699188, at *7). The faxes must "be intentional or volitional, as opposed to inadvertent." *Id.* (quotations and citations omitted). Here, the faxes were intentionally sent by the defendant to the plaintiff. To facilitate this, the defendant hired outside marketing company RLM. (R. 122 ¶ 10.) RLM was authorized to send the March 2017 fax on the defendant's behalf. (*Id.* ¶ 45.) The fax was sent to the plaintiff. (*Id.* ¶ 46; R. 113-2 at 3.) Accordingly, the Court grants the plaintiff's motion for summary judgment as to willfulness pursuant to § 227(c)(5), as it relates to the March 2017 fax only. *See Hossfeld*, 726 F. Supp. 3d at 880 (awarding summary judgment to plaintiff when undisputed evidence showed that third party hired was "intentionally and volitionally" by defendant to place calls in violation of TCPA and the call was "deliberately placed").

## CONCLUSION

The plaintiff's motion for summary judgment [107] is granted as to the March 2017 fax, and denied as to the April 2018 and August 2018 faxes. Likewise, the plaintiff's motion as to treble damages for willfulness is granted only as to the March 2017 fax, and denied as to the April 2018 and August 2018 faxes. The parties are to confer and submit a joint status report to the Court by August 1, 2025, that includes the anticipated length of trial and the parties' availability for a trial starting December 1, 2025, or February 23, 2026.

Date: July 15, 2025

JEREMY C. DANIEL
United States District Judge